IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES BILELLO, | CASE NO. 8:08CV433 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| PHIL SHEAR, RICK HAASE, GERALD KLINETOBE, and the CITY OF WAYNE, a Nebraska Municipality, | |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 28). For the reasons discussed below, the Motion will be granted.

## PROCEDURAL BACKGROUND

Plaintiff James Bilello brought this action against three police officers, Defendants Phil Shear, Rick Haase, and Gerald Klinetobe, all employed by the fourth Defendant, City of Wayne, Nebraska. (Complaint, Filing No. 1). Bilello alleges that on February 1, 2007, the officers arrested him without probable cause and with the use of excessive force, injuring his wrist. Bilello's first cause of action asserts a claim under 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (*Id.*, Count I, ¶ 2). That claim appears to be directed against the City of Wayne only, based on alleged improper training and supervision of the officers. (*Id.*, ¶ 13). Bilello's second cause of action asserts a claim against the individual officers for false arrest and false imprisonment under state common law. (*Id.*, Count II, ¶¶ 1-2). Bilello's third cause of action asserts a claim against the individual officers for negligence. (*Id.,* Count III, ¶ 1).

The Defendants' Brief in Support of Motion for Summary Judgment (Filing No. 30) contains a Statement of Undisputed Material Facts, with numbered paragraphs and pinpoint citations to the evidentiary record, in compliance with NECivR 56.1(a). The Plaintiff's Brief in Opposition to Motion for Summary Judgment (Filing No. 37) does not address those numbered paragraphs. Instead, the Plaintiff has presented his own narrative of facts.

NECivR 56.1(b)(1) provides:

**Response to Movant's Statement**. The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint reference to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response</u>.

Accordingly, the Court accepts the properly referenced statement of material facts in the Defendants' Brief (Filing No. 30, at 1-4). The Court has also reviewed the affidavits and other evidence that have been submitted for the Court's consideration,[1] The following section provides a summary of the facts supported by the evidentiary record.

---

[1] Affidavit of Rick Haase (Filing No. 29-2)("Haase Aff."); Affidavit of Gerald Klinetobe, Filing No. 29-3 ("Klinetobe Aff."): Affidavit of Phil Shear, Filing No. 29-4 ("Shear Aff."); Affidavit of Lance Webster, Filing No. 29-5 ("Webster Aff."); Affidavit of Mark D. Fitzgerald, Filing No. 29-6 ("Fitzgerald Aff.") and Ex. A to Affidavit; Deposition of Lance Webster, Filing No. 38-2 ("Webster Depo."). Also in the record, filed as an "Index in Support of Motion to Extend Deadline for Filing Resistance to Defendants' Motion for Summary Judgment" (Filing No. 35) are the Deposition of James Bilello, ("Bilello Dep."), Affidavit of James Bilello ("Bilello Aff."), Deposition of Justin Chinn ("Chinn Dep."), and other evidentiary submissions considered, but not referenced herein.

**FACTS**

Defendants Rick Haase, and Gerald Klinetobe are employed as police officers, and Defendant Phil Shear is employed as a police lieutenant, by the Defendant City of Wayne, Nebraska. (Haase Aff., ¶ 1; Klinetobe Aff., ¶ 1, Shear Aff., ¶ 1.) On February 1, 2007, at approximately 11:30 p.m., Haase and Klinetobe were conducting surveillance from their patrol car in a residential section of Wayne. (Haase Aff., ¶ 2; Klinetobe Aff., ¶ 2.) The officers drove in the vicinity of a single-family residence in Wayne, located across the street from a baseball park. At that residence, the officers observed a pickup truck backed into the driveway. The pickup bore the sign "Anytime Tree Service." Both officers knew that the pickup belonged to a convicted burglar, Justin Chinn, and that Chinn did not live at that residence. (Haase Aff., ¶ 2; Klinetobe Aff., ¶ 3.)

Haase drove the police car into the driveway and both officers exited the car. (Haase Aff., ¶ 3; Klinetobe Aff., ¶ 4.) Chinn exited the driver's side of the pickup, and Bilello exited the passenger side. Chinn and Bilello walked toward the officers with their hands in their pockets, and Haase requested that they remove their hands from their pockets. Chinn removed his hands from his pockets, but Bilello did not. (Haase Aff., ¶ 5, Klinetobe Aff., ¶¶ 4-5.) Klinetobe asked Bilello if he lived at the residence, and Bilello responded that he did not. Bilello then began to use abusive language toward the officers. (Klinetobe Aff., ¶ 6.)

Bilello moved toward Haase while Haase was on his radio, and Haase became concerned when he saw that Bilello had a bulge in his coat. (Haase Aff., ¶ 8; Klinetobe Aff., ¶ 8.) Haase told Bilello that he was going to pat him down for weapons, and Haase conducted a pat down. (Haase Aff., ¶ 9, Klinetobe Aff., ¶ 8.) Haase then asked for

3

permission to search Chinn's pickup, received permission, and began the search. (Haase Aff., ¶ 10, Klinetobe Aff., ¶12.) In the pickup, Haase observed electronic game cartridges and a game device. (Haase Aff., ¶ 10.)

Meanwhile, Lieutenant Shear arrived on the scene, in response to a call for assistance from Haase. (Shear Aff., ¶ 2.) Shear was familiar with Chinn's criminal history, including a felony burglary conviction. (Shear Aff., ¶ 4.) Haase pointed out the electronic game items to Shear, who completed the search. (Shear Aff., ¶ 5.) Shear also observed various video games and a PSP (Play Station) game system on the hood of Chinn's car. (*Id.*) Shear took possession of two carrying cases containing games and the PSP game system. (*Id.*). Haase and Shear were aware that both Chinn and Bilello had been named in police reports involving the investigation of stolen electronic games and game devices. (Haase Aff., ¶ 2 & Attachment A.; Shear Aff., ¶ 6 & Attachment A.) Shear showed Bilello the items from Chinn's pick up, and asked Bilello whether any of the items were his and whether he had receipts for them. Bilello said that the property was his, although he had no receipts. Bilello continued to use abusive language toward the officers. (Shear Aff., ¶ 6.)

Shear told Bilello that he was going to take the video games and game system and compare the items to burglary losses. Bilello yelled at Shear, "The Hell you are." (Shear Aff., ¶ 7.) Bilello moved toward Shear in a manner that caused Shear to perceive that Bilello was going to strike him, and Shear responded by putting Bilello in a left rear wrist lock and directing him toward the patrol car. (Klinetobe Aff., ¶ 13; Shear Aff., ¶¶ 8-10.) Bilello denies that he made any gesture that was intended as a physical threat or an attempt to hit anyone. (Bilello Aff., at 1.) Bilello perceived that he was

tackled by Shear from behind, and forced to bend, face down, on the hood of the patrol car.  (Bilello Dep. 69:2-24; 71:6-19.)  Chinn perceived that Shear "grabbed him and turned, put him on the hood of the car."  (Chinn Depo. 41:19-20.)  Bilello's left hand was cuffed, but his right hand was under his torso, against the patrol car.  He did not bring the right hand out to be cuffed, despite the officers' orders to do so and Shear's efforts to pull the hand out from between Bilello's torso and the patrol car.  After twenty to thirty seconds, the officers succeeded in getting Bilello handcuffed, and he was transported to the Wayne Police headquarters.  (Haase Aff., ¶¶ 11-12; Klinetobe Aff., ¶¶ 14-15; Shear Aff., ¶¶ 11-13.)  Bilello contends that he could not pull his hand out from under his torso voluntarily, because the officers had too much pressure on his torso.  (Bilello Aff., at 2.)

Klinetobe fingerprinted Bilello and issued him a citation for a violation of Neb. Rev. Stat. § 28-906, obstructing a police officer.  (Klinetobe Aff., ¶¶ 18-19.)  A special prosecutor was appointed, but declined prosecution.   (Klinetobe Aff., ¶ 20.)  At no time during the handcuffing, transportation, or booking procedures were the officers aware that Bilello had sustained any injury to his wrist.  (Haase Aff., ¶13; Klinetobe Aff., ¶¶16-18; Shear Aff., ¶¶ 15-16.)

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).  "Where the nonmoving party will bear the burden

of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [his] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 587), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

In other words, "[o]n a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009). Otherwise, where the

Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

## DISCUSSION

### Bilello's Claim under "Count I" Based on Alleged Constitutional Violations

It is unclear from the Complaint whether Bilello is making any claim against the individual Defendants in Count I, based on alleged violations of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments.  Regardless, the individual Defendants have raised the defense of qualified immunity from suit with respect to any claims against them for excessive force and/or unlawful arrest.  The two-step approach for the analysis of qualified immunity under *Saucier v. Katz*, 533 U.S. 194 (2001), is no longer mandated, and the Court may determine whether the constitutional right asserted by a plaintiff was clearly established at the time of a defendant's actions, without first determining whether the plaintiff's allegations in fact make out any such constitutional violation.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  In this case, however, the *Saucier* analysis is appropriate, and the Court concludes that no constitutional violation occurred.

"'The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person.'" *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir.2008) (quoting *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir.1998)). "A section 1983 action is supported when a police officer violates this constitutional right." *Id.*

"The force employed by an officer is not excessive, and thus not violative of the Fourth Amendment, if it was 'objectively reasonable under the particular circumstances.'" *Cook v. City of Bella Villa*, 2009 WL 3151329, at 6 (8th Cir. Oct. 2, 2009) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the '"nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This reasonableness analysis requires a court to evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.* "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

The uncontroverted evidence before the Court shows that the individual defendants did have reasonable cause to question Bilello, to frisk him, and ultimately to use force to handcuff him when he cursed at Shear, told Shear that he would not allow

him to take possession of property that Shear suspected was stolen, and made a gesture that Shear interpreted as preparatory to an assault:

"I told Bilello that I was going to seize the video games and game system and compare it to the burglary losses.  Bilello shouted, 'The Hell you are.'  As Bilello shouted this, he turned toward me and quickly moved his left hand in which he held his cellular telephone away and back behind his head.  I thought he was going to strike me with the cellular telephone."  (Shear Aff., ¶¶ 7-8.)  "While Shear and Bilello were talking, I observed Bilello turn abruptly toward Shear with his left arm raised holding his cellular telephone.  Bilello's left arm swung in a circular motion toward Lt. Shear and Shear intercepted Bilello's left arm and moved it to a rear wrist lock."  (Klinetobe Aff., ¶ 13.)  "While I was standing at Chinn's pickup, I peripherally observed Bilello lean forward and lunge at Lieutenant Phil Shear who had arrived."  (Haase Aff., ¶ 11.)  Chinn also observed Bilello raise the cell phone in his left hand, immediately prior to Shear's use of force.  (Chinn Depo., 40:10 to 41:15.)

In response, Bilello argues in his brief that he is smaller than the officers and "would have to be insane to hit any of the three of them even if they weren't heavily armed."  (Filing No. 37, at 5.)  Bilello contends that he "is profane and obscene, not crazy."  *Id*.

The force employed by the officers was objectively reasonable under the totality of the circumstances.  To the extent that Count I of Bilello's Complaint states any claim against the individual Defendants, they are entitled to qualified immunity from suit.  All Defendants have discharged their burden by showing an absence of evidence to support Bilello's claims based on alleged constitutional violations.

**Bilello's Claims under "Count II," based on False Arrest and False Imprisonment**

Nebraska's Political Subdivisions Tort Claims Act ("NPSTCA") provides that "no suit shall be maintained against [a] political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act."  Neb. Rev. Stat. § 13-902 (Reissue 2007).  "Employee of a political subdivision shall mean any one or more officers or employees of the political subdivision or any agency of the subdivision . . . when they are acting in their official capacity."  Neb. Rev. Stat. 13-903(3) (Reissue 2007).  The NPSTCA does not apply to actions against political subdivisions or their employees based on claims of false arrest or false imprisonment.  Neb. Rev. Stat. § 13-910(7) (Reissue 2007).  These are among the exceptions to the PSTCA's waiver of sovereign immunity.  *McKenna v. Julian*, 763 N.W.2d 384, 389 (Neb. 2009).

In *McKenna*, the Nebraska Supreme Court held that "[w]here a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA."  *Id*. at 391 (citing *Wise v. Omaha Public Schools*, 714 N.W.2d 19 (Neb. 2006)).  Because the plaintiff, McKenna, alleged that the defendant police officer perpetrated a false arrest, and did not allege or argue that the officer acted outside the scope of his employment, the plaintiff's claim was dismissed.  *Id*. at 391.

Bilello has not alleged that the individual Defendants acted outside the scope of their employment, and the uncontroverted evidence indicates that they were acting in the course of their duties as employees of the City of Wayne police department. Bilello's claims based on false arrest and false imprisonment will be dismissed as a

matter of law, and because the Defendants have discharged their burden by showing an absence of evidence to support Bilello's claim.

**Bilello's Claims under "Count III," Based on Negligence**

Nebraska's Political Subdivisions Tort Claims Act provides that "[n]o suit shall be commenced against any employee of a political subdivision for money on account of . . . personal injury . . . caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued." Neb. Rev. Stat. § 13-920(1) (Reissue 2007).  Defendants suggest that Bilello has not filed any such claim, and Bilello's Complaint and his responsive Brief are both silent on that issue.

Bilello's claims based on negligence will be dismissed as a matter of law, and because the Defendants have discharged their burden by showing an absence of evidence to support Bilello's claim.

## CONCLUSION

The Defendants have satisfied their burden of demonstrating that there is an absence of evidence to support Bilello's claims, and Bilello has not demonstrated that there are any genuine issues of material fact remaining for trial.  The Defendants are, therefore, entitled to judgment in their favor as a matter of law.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment filed by Defendants Phil Shear, Rick Haase, Gerald Klinetobe, and the City of Wayne (Filing No. 28) is granted;

2. The Plaintiff James Bilello's Complaint (Filing No. 1) is dismissed, with prejudice; and

3. A separate Judgment will be entered.

DATED this 20th day of October, 2009.

> BY THE COURT:
>
> s/Laurie Smith Camp
> United States District Judge